HALL, Judge.
Plaintiff, Dwight M. Stuart, seeks an increase in the special and general damages awarded him in a judgment rendered pursuant to a jury verdict. Following a directed verdict as to defendant’s liability, the jury awarded $3,000 in general damages and $1,759.59 in special damages for injuries and property damage received by plaintiff in a relatively minor rear-end automobile accident. We affirm the judgment of the district court.
*469 On October 27, 1977 while waiting at a traffic light plaintiff’s truck was struck from the rear by an automobile. The driver of the automobile testified he was traveling at a low rate of speed, approximately 10 miles per hour, at the time of impact. This testimony is supported by the relatively minor damage done to plaintiff’s truck which was repaired for $243.50. According to plaintiff, the collision caused his head to be thrown sharply forward and then backward hitting the rear of the truck cab. Plaintiff also testified that at the same time his left knee struck something in front of him (presumably the dashboard) causing injuries to his knee.
Following the accident, plaintiff drove to the office of Dr. Burt, an orthopedic surgeon, who diagnosed his injuries as a mild concussion, moderate cervical strain, and a mild knee injury. At this time Dr. Burt advised plaintiff to take off work for several days and prescribed Norgesic, a muscle relaxant and pain killer. No hospitalization was required and plaintiff returned home. Plaintiff continued seeing Dr. Burt until November 16, 1977. During these visits he received physical therapy consisting of heat, massages, and muscle stretching. Dr. Burt found few objective symptoms of injury and the total medical bill for treatment and x-rays from the date of the accident until November 16, 1977 totaled $255.
Plaintiff took sick leave from his position with the Shreveport Police Department for one month, returning to work on November 27, 1977. He was paid his regular salary while he was off work.
In February of 1978, complaining of neck problems, headaches, and that his knee gave way at times, plaintiff consulted Dr. Bick-nell, another orthopedic surgeon, who treated him until October 1978. Dr. Bicknell found plaintiff had a full range of cervical motion, no muscle spasms and no evidence of any neurological deficit in the upper extremities. Most of the tests revealed no abnormality, dislocation nor fractures of the neck. Dr. Bicknell diagnosed plaintiff’s neck injury to be an acute musculoligamen-tous sprain to the cervical area. Plaintiff’s knee was also examined and no instability was found. Dr. Bicknell diagnosed the knee injury as being a chondromalacia of the patella of the left knee. While under Dr. Bicknell’s care plaintiff received various anti-inflammatory medications for his neck and knee and was advised to use moist heat on the affected areas.
Following the April 25, 1978 office visit, Dr. Bicknell instructed plaintiff to report again if he had further problems. Plaintiff did not report back until October 10, 1978, his last visit to Dr. Bicknell, some six months later.
On October 16, 1978, approximately one year after the accident, plaintiff consulted Dr. Faludi, a neurosurgeon. At this time plaintiff complained of pain in the back of the neck, at the base of the skull, and more particularly, pain in the midneck area and of headaches. Dr. Faludi found a moderately severe tenderness in the suboccipital region and also pain and tenderness over the occipital nerve. Dr. Faludi diagnosed plaintiff’s injury as a moderate to severe cervical sprain which affected to some extent the articulations of the cervical spine. He found no muscle spasms and plaintiff’s neck motion was good. Dr. Faludi suggested the use of steam packs, various exercises to loosen the neck, and prescribed medication. He also testified that during the visit of February 26, 1979 he felt plaintiff would be doing quite well in four to six weeks.
Plaintiff was subsequently involved in a second accident for which he was apparently treated by Dr. Faludi in March 1979. There is no evidence of any medical treatment connected with the accident in question after February 1979.
Besides the testimony of the various attending physicians, the jury also heard testimony from plaintiff, his wife, and a number of plaintiff’s friends and co-workers. These witnesses testified that on occasion plaintiff complained of neck pains, and that they had “seen” this pain by observing his facial expressions and restricted movements. Plaintiff’s wife testified he had become nervous, complained of headaches, *470 soreness of the neck, and was occasionally unable to complete the sex act due to neck problems. Plaintiff testified as to his continued pain and discomfort and also introduced a diary he kept since the date of the accident in which he noted his severe pain in detail. In spite of this testimony, the jury obviously gave greater weight to the testimony of these same witnesses that tended to minimize plaintiff’s pain and discomfort. Substantial testimony was given concerning plaintiff’s continued deer and squirrel hunting and fishing trips following the accident.
The only issue to be determined on this appeal is whether the award of the jury was inadequate and amounted to an abuse of the jury’s discretion. The jury awarded $1,759.59 in special damages and $3,000 in general damages.
Plaintiff contends that he sustained special damages totaling $2,417.19, consisting of $243.50 property damage, $858.69 medical expenses, and $1,315 loss of wages. As previously mentioned, plaintiff lost no wages and the jury’s award for special damages exceeded the amount specifically proven.
Plaintiff also contends that in light of today’s standards an award of general damages of $3,000 for an injury of this duration and intensity is inadequate. Plaintiff cites three cases wherein a greater award was given for somewhat similar injuries. Defendant, on the other hand, cites numerous cases involving injuries somewhat similar to those of plaintiff where the awards were less. Under the guidelines of Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); and Reck v. Stevens, 373 So.2d 498 (La.1979), a jury award or an award of a trial court can only be disturbed when the record clearly reveals that the trier of fact abused its discretion in making the award. While we find that the evidence indicates plaintiff may still have had some pain and discomfort more than a year after the accident and the award is on the low side, it is not so low as to constitute an abuse of the great discretion of the trier of fact.
The judgment is affirmed at plaintiff’s costs.
Affirmed.